# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0761-24

J.G.,

    Plaintiff-Appellant,

v.

ST. JOHN THE BAPTIST RUSSIAN
ORTHODOX BROTHERHOOD OF
SINGAC and RUSSIAN ORTHODOX
PATRIARCHAL PARISHES IN THE
USA,

    Defendants-Respondents.

_____

Argued November 13, 2025 – Decided August 7, 2026

Before Judges Smith, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3733-21.

Michael L. Rosenberg argued the cause for appellant (Seeger Weiss LLP, attorneys; Michael L. Rosenberg and Carlos F. Rivera, on the briefs).

John C. Connell argued the cause for respondents (Archer & Greiner PC, attorneys; Suzanne K. Collins, of counsel and on the brief).

PER CURIAM

Plaintiff appeals the trial court's order granting summary judgment in defendants' favor and dismissing his direct claims against defendants under the Child Victims Act (CVA), N.J.S.A. 2A:14-2b, for: negligence; negligent hiring, retention, and supervision; and failure to train, warn, or educate church parishioners on how to avoid or report sexual abuse against children by church employees. For the reasons which follow, we affirm in part and reverse in part.

I.

We view the facts from the summary judgment record in the light most favorable to the non-moving party. See Christakos v. Boyadjis, 262 N.J. 447, 467 (2026).

St. John the Baptist Russian Orthodox Brotherhood of Singac (St. John the Baptist) is one of thirty-five Orthodox Christian parishes in the United States belonging to the non-profit religious corporation, Russian Orthodox Patriarchal Parishes (Patriarchal Parishes). In 1994, plaintiff J.G.[1] began attending St. John the Baptist with his family. Plaintiff was five or six years old at the time. Archpriest Father Kosich, now deceased, was the only assigned priest during the

---

[1] To protect privacy interests, we use initials and fictitious names. See R. 1:38-3(d)(11).

years plaintiff attended the church. Kosich was ordained as a priest in 1991 and assigned to St. John the Baptist in May 1993.

Plaintiff attended Sunday school taught by Kosich and later became an altar server. While an altar server, plaintiff was under the direction, supervision, and control of Kosich. Plaintiff alleges that shortly after he began attending St. John the Baptist, Kosich began touching him inappropriately. Plaintiff alleges the touching escalated from fondling, to forcing plaintiff to perform sexual acts on him, to Kosich performing sexual acts on plaintiff, and to anally raping plaintiff on a weekly basis. The assaults took place typically before mass.

Because of the abuse, plaintiff repeatedly asked his mother not to attend church anymore, without telling her why. His parents insisted he continue attending. The alleged abuse lasted three years, ending in 1997, when plaintiff was eight years old, after a final incident where Kosich violently and forcefully raped plaintiff in the rectory of the church. After the rape, plaintiff had a significant amount of blood on him and in his underwear. Upon returning home, plaintiff removed his clothing and put it in the laundry basket for his mother to wash. Although his parents allowed plaintiff to stop attending at that point, plaintiff never spoke about the sexual abuse with his parents. That was the last time plaintiff attended St. John the Baptist.

3

A-0761-24

Plaintiff alleges his abuse always occurred on church property, specifically in areas reserved for priests or altar servers that were off limits to general parishioners, and in the church basement and rectory where Kosich lived with his spouse and daughter. When plaintiff asked Kosich to stop, plaintiff alleged Kosich told him that he or his family would be hurt or attacked if he told anyone. Plaintiff did not tell anyone about the abuse he endured while attending St. John the Baptist.

During the years plaintiff attended St. John the Baptist, the Patriarchal Parishes had no policies or procedures to train, warn, or advise church personnel on how to prevent the sexual abuse of minors or identify whether children were being abused. Plaintiff noted during one instance of abuse, another unidentified child was involved, but he is unaware if the incident was reported. Plaintiff is unaware of anyone at the church who knew of the abuse or whether any other person had come forth with similar allegations against Kosich.

Plaintiff first spoke of his abuse one year after he stopped attending St. John the Baptist, when he confided in his father's friend, a corrections officer, who plaintiff alleges then forced him to reenact the sexual acts on the officer. Plaintiff did not report the abuse again until he told a hospital therapist at age

4

fourteen or fifteen. The record reveals no instance where defendants were given notice of plaintiff's allegations against Kosich until this lawsuit commenced.

Plaintiff filed suit under the CVA in 2021. In his direct claims against the church, he alleged, among other things, that defendants were negligent in failing to protect him from foreseeable harm and engaged in the negligent hiring and supervision of Kosich.

Plaintiff deposed Father Mark Rashkov, defendants' representative. At the time of his deposition, Father Rashkov was the acting rector of St. John the Baptist and vice chancellor of the Patriarchal Parishes. According to Father Rashkov, the issue of sexual abuse of children by the clergy was "always on [the parishes'] radar." Rashkov stated that Patriarchal Parishes and St. John the Baptist had an oral "[o]pen door policy, making sure that kids are never alone, that there [are] always at least two adults present." Father Rashkov testified this policy would have been in place when the alleged abuse occurred.

As defendants' representative, he testified that Patriarchal Parishes had a duty to know when a priest is violating their oral policy and engaging in the abuse of minors. He testified any concerns regarding a child's safety would be discussed one-on-one with priests, when necessary, but no record of the conversation would be included in the priest's personnel file. Father Rashkov

A-0761-24

stated that such conversations were the result of Patriarchal Parishes "[b]eing proactive." To his knowledge, there were no conversations pertaining to allegations of abuse or misconduct. Indeed, Father Rashkov testified he was not aware of any complaints involving inappropriate sexual conduct of a clergy member with a minor. Further, he testified in the event of an oral complaint, the church would request the complaint be in writing so they could add it to a clergy member's personnel file.

Defendants moved for summary judgment, seeking dismissal of plaintiff's complaint. The trial court found: Kosich was defendants' employee; his alleged abuse of plaintiff occurred at the church; plaintiff never told anyone of the abuse; no third party witnessed the abuse; and plaintiff did not show the physical evidence from the last incident to anyone. The court next found plaintiff failed to show that defendants had either actual or constructive notice of Kosich's abusive behavior.

Absent evidence of any notice, the trial court determined that Kosich's abuse was not foreseeable and concluded defendants had no duty to protect plaintiff. The court also determined defendants' failure to have and maintain written policies to prevent or identify sexual abuse was not the proximate cause of the continued abuse. The court further determined defendants did not need

A-0761-24

to have written policies, as "some things go without saying." The trial court did not directly address plaintiff's claims of negligent hiring or failure to train. The court nonetheless determined plaintiff's failure to demonstrate defendants knew of Kosich's proclivities precluded any liability, and granted summary judgment, dismissing plaintiff's complaint.

## II.

We review a trial court's grant or denial of summary judgment de novo, applying the same standard used by the trial court. Christakos, 262 N.J. at 467. A court must grant summary judgment in the movant's favor when there is no genuine issue of material fact for the fact finder to resolve. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "The 'judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (alteration in original) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986)). However, a trial court's interpretations of law are reviewed de novo. Johnson v. Wilkerson, 262 N.J. 75, 81 (2025).

A-0761-24

III.

We examine plaintiff's claims following the Legislature's intent under the CVA, as clearly stated by the Court in Hornor v. Upper Freehold Reg'l Bd. of Educ.:

> As the Legislature made clear, a plaintiff may assert a direct claim against a school district under N.J.S.A. 59:2-1.3(a)(2) for "negligent hiring, supervision, or retention of any public employee," limited to cases in which damages to a minor victim resulted from sexual assault and other sexual misconduct as defined in that provision. That direct claim is subject to a negligence standard as the statute prescribes.
>
> [263 N.J. 120, 153 (2026) (citing N.J.S.A. 59:2-1.3(a)(2)).][2]

Our well-settled jurisprudence is clear: direct negligence claims rest on four fundamental elements: "[(1)] there was a legal duty, [(2)] the duty was breached, [(3)] the breach proximately caused a foreseeable injury, and [(4)] plaintiff suffered damages." Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 24 (App. Div. 2021).

---

[2] Our Legislature further made clear that "public entities subject to N.J.S.A. 59:2-1.3 and nonprofit organizations subject to the [Charitable Immunity Act, N.J.S.A. 2A:53-7 to -11,] face equivalent liability standards." Hornor, 263 N.J. at 152.

A-0761-24

In his complaint, plaintiff's general negligence theory is that defendants had a duty to protect children, like J.G., from the foreseeable harm of sexual abuse by clergy members like Kosich. Contending this duty applies to defendants, plaintiff asserts his proofs were sufficient to defeat summary judgment. Plaintiff then identifies defendants' alleged misfeasance and nonfeasance and aligns each with breach of a particular duty associated with that act or omission.

We examine the complaint.

Count one alleges negligent supervision against defendants, asserting they failed to prevent Kosich from having access to plaintiff and failed to put safeguards in place to protect plaintiff. Count two also alleges negligent supervision, with plaintiff asserting defendants failed to enact proper policies and procedures to ensure the safety of children and failed to engage in active supervision of priests to prevent inappropriate behavior towards children. Count three alleges negligent hiring. Plaintiff asserts defendants were negligent in screening and investigating prospective employees. Count four alleges defendants breached their duty to plaintiff by failing to train, warn, or educate its parishioners, including parents and children, about how to report sexual misconduct.

9

All plaintiff's claims sound in negligence against defendants. To avoid duplicate analysis, and for ease of the reader, we classify the claims into two categories. We first analyze count three, negligent hiring. We then analyze counts one, two, and four collectively under the common theme of negligent supervision.

A.

Negligent Hiring

Plaintiff argues the trial court erred in granting summary judgment to defendants because he provided sufficient evidence that they negligently hired Kosich.

"New Jersey courts recognize the tort of negligent hiring, 'where the employe[r] either knew or should have known that the employee was violent or aggressive, or that the employee might engage in injurious conduct toward third persons.'" Davis v. Devereux Found., 209 N.J. 269, 292 (2012) (quoting Di Cosala v. Kay, 91 N.J. 159, 173 (1982)). Our Supreme Court "has also imposed upon employers with in loco parentis responsibilities a duty to exercise reasonable care in the supervision of employees." Ibid.

> [T]he question presented is whether the employer, knowing of its employee's unfitness, incompetence or dangerous attributes when it hired or retained its employee, should have reasonably foreseen the

10

likelihood that the employee through his employment would come into contact with members of the public, such as the plaintiff, under circumstances that would create a risk of danger to such persons because of the employee's qualities.

[Di Cosala, 91 N.J. at 177.]

Once foreseeability is established, a plaintiff must show that, "through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." Id. at 174.

Here, plaintiff offers no facts which demonstrate defendants knew about Kosich's abusive proclivities before he was hired. Nothing in the record suggests defendants had actual notice of Kosich's unfitness, incompetence, or dangerous attributes to willingly disregard the risk of danger posed by these qualities. During the years of alleged abuse, plaintiff presents no evidence to show defendants discovered these acts, conceding he never told anyone nor knew of anyone who observed them. Plaintiff has failed to establish that the church negligently hired Kosich.

We discern no error by the trial court in granting summary judgment for defendants on this claim.

11

B.

Negligent Supervision

Plaintiff first asserts defendants had an in loco parentis relationship with children who attended the church, establishing a duty to supervise its employees to protect plaintiff. Plaintiff further contends defendants breached that duty by failing to stop Kosich's alleged sexual abuse.

i.

Duty To Supervise

The existence and scope of a duty of care is a legal question. Shields v. Ramslee Motors, 240 N.J. 479, 487 (2020) (citing Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). "Whether, in a given context, 'a duty to exercise reasonable care to avoid the risk of harm to another exists is [a question] of fairness and policy that implicates many factors.'" Coleman v. Martinez, 247 N.J. 319, 337 (2021) (quoting Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 572 (1996)). Foreseeability of the harm, fairness, and policy are connected in establishing a duty of care. Id. at 338 (citing Carvalho, 143 N.J. at 573).

The assessment of fairness and policy involves consideration of several factors: "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed

A-0761-24

solution." Est. of Narleski v. Gomes, 244 N.J. 199, 223 (2020) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). "[A]ll considerations must be balanced 'in a "principled" fashion, leading to a decision that both resolves the current case and allows the public to anticipate when liability will attach to certain conduct.'" Coleman, 247 N.J. at 338 (quoting G.A.-H. v. K.G.G., 238 N.J. 401, 414 (2019)).

Foreseeability is based on a defendant's knowledge of the risk of injury and is susceptible to objective analysis. Id. at 339 (quoting J.S. v. R.T.H., 155 N.J. 330, 338 (1998)). That knowledge of the risk may be actual awareness or constructive, such that a defendant may be charged with knowledge if they are positioned to "discover the risk of harm." Ibid. (quoting J.S., 155 N.J. at 338). We note "when the risk of harm is that posed by third persons, a plaintiff may be required to prove that defendant was in a position to know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person[] that was likely to endanger the safety of another." Ibid. (alterations in original) (quoting J.S., 155 N.J. at 338) (internal quotation marks omitted).

A-0761-24

Plaintiff contends defendants stood in loco parentis with him when he attended St. John the Baptist, and thus the harm alleged by him was foreseeable. We agree.

Our Supreme Court has held that "traditional concepts of duty govern the liability of institutions with in loco parentis responsibilities." Davis, 209 N.J. at 292. The Court has long recognized the in loco parentis relationship among schools, teachers, and their students. See Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 92-93 (2006). In Hardwicke, the Court held that the defendant boarding school stood in loco parentis to the plaintiff, a student who had been sexually abused from 1969 to 1971 by the boarding school's musical director. Id. at 91. The Hardwicke Court recognized the "unique role that educators play in the care of students." Id. at 92 (first citing Frugis v. Bracigliano, 177 N.J. 250, 268 (2003) ("While their children are educating during the day, parents transfer to school officials the power to act as the guardians of those young wards."); and then citing Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 654 (1995) ("When parents place minor children in private schools for their education, the teachers and administrators of those schools stand in loco parentis over the children entrusted to them.")).

A-0761-24

The Frugis Court tells us there is "[n]o greater obligation . . . placed on school officials than to protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." 177 N.J. at 268. Therefore, those in a supervisory role "must take reasonable measures to assure that the teachers and administrators who stand as surrogate parents during the day are educating, not endangering, and protecting, not exploiting, vulnerable children." Ibid.

The principles established in Hardwicke, Frugis, and Vernonia are easily applicable to the facts at hand. Plaintiff's parents entrusted his care to Kosich, a priest who served as a Sunday school teacher and provided plaintiff a religious education. In his role as parish priest, Kosich also administered religious ceremonies at the church, assigning the six-year-old plaintiff altar server duties. These duties placed plaintiff and Kosich alone in church spaces reserved only for priests and altar servers. The control and supervisory responsibilities which Patriarchal Parishes granted to Kosich mirror the control and supervisory responsibility which schools grant their administrators and teachers. We conclude that defendants stood in loco parentis with plaintiff when his parents sent him to Sunday school at St. John the Baptist and permitted plaintiff to participate in religious services as one of Kosich's altar servers.

15

Father Rashkov's testimony supports our conclusion defendants stood in loco parentis to plaintiff. He testified that the sexual abuse of plaintiff was foreseeable by the church. According to Father Rashkov, the issue of sexual abuse of children by the clergy was "always on [the parishes'] radar." Father Rashkov testified the church had an "open door" policy, which did not permit a clergy member to be alone with a minor, during the time that plaintiff alleged he was abused.

Analyzing the record, including Father Rashkov's testimony, through the lens of our foreseeability jurisprudence, we conclude defendants' duty to protect plaintiff from this foreseeable harm existed at the time he attended St. John the Baptist.

ii.

Breach

Plaintiff argues, because defendants were positioned to discover the harm at any point while the abuse took place, they had constructive notice of the abuse and breached their duty to plaintiff by failing to stop it. Plaintiff also argues that defendants breached their duty by failing to implement and enforce reporting procedures which would have informed the church of Kosich's conduct.

A-0761-24

A defendant breaches their duty when they fail to act in accordance with their duty or performs in a negligent manner. Velazquez v. Jiminez, 172 N.J. 240, 262 (2002).

The Supreme Court has examined the effect of notice on breach of an employer's duty to supervise an employee accused of tortious conduct.

> An employer may . . . be held vicariously liable for . . . damages for supervisory sexual harassment [and abuse] that occurs outside the scope of the supervisor's authority, if the employer had actual or constructive notice of the harassment, or even if the employer did not have actual or constructive notice, if the employer negligently or recklessly failed to have an explicit policy that bans sexual harassment and that provides an effective procedure for the prompt investigation and remediation of such claims.
>
> [Lehmann v. Toys 'R' Us, 132 N.J. 587, 624 (1993) (emphasis added).]

The Frugis Court utilized Lehmann's vicarious liability holding to extend the principles surrounding constructive notice to direct claims against institutions with a duty to protect children in their care. A defendant may breach their duty if they fail to "implement effective rudimentary reporting procedures that would have informed [defendant] of [an employee's] misconduct" and "called for scrutiny of [the employee's] activities." Frugis, 177 N.J. at 270.

17

Because the undisputed record shows defendants did not have actual notice of the alleged abuse by Kosich, we focus on constructive notice.

Constructive notice turns on whether defendants were positioned to discover the harm and should have known of its occurrence through the exercise of due diligence. See Lehmann, 132 N.J. at 622. Because Patriarchal Parishes hired Kosich, and could supervise and train him, and because the abuse of plaintiff took place over three years, defendants were uniquely positioned to discover the harm. Our conclusion is buttressed by defendants' oral "[o]pen door policy, making sure that kids are never alone, that there [are] always at least two adults present." Defendants were in a position to know that risk of harm to children was foreseeable, and, if it had conducted due diligence in enforcing their oral policy, could have known and stopped its occurrence.

Defendants concede that no oral or written policies existed at the time plaintiff was harmed which specifically prohibited or prevented sexual abuse. However, they contend such policies were unnecessary. Lehmann holds otherwise. 132 N.J. at 624. The Lehmann Court held employers can be found liable if they failed to implement policies that ban sexual harassment and abuse and implement measures for "prompt investigation and remediation of such claims." Ibid. Following the rationale in Lehmann, our Court expanded its

18

holding to apply to "claims predicated on facts indicating child abuse," recognizing our state's public policy and the vulnerability of children. Davis, 209 N.J. at 291 (quoting Hardwicke, 188 N.J. 102); see also Frugis, 177 N.J. at 273 (holding promulgating policies to report abuse and implementing training programs to ensure the effectiveness of said policies promotes the safety and welfare of children, and is consistent with a school's parens patriae role).

Here, Patriarchal Parishes had no such policies in place; the abusive conduct took place over years, not days, weeks, or months; and the abusive conduct occurred on church property typically before mass. Using the Frugis standard, we conclude that the record contains sufficient evidence of defendants' breach of duty to defeat summary judgment.

iii.

Causation and Damages

Causation is a two-part analysis, requiring a showing of but-for causation and proximate cause. New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 379 (App. Div. 2018). But-for causation, or cause-in-fact, "requires proof that the result complained of probably would not have occurred 'but for' the negligent conduct of the defendant." Ibid. (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996)). Proximate cause, an issue typically

19

reserved for the fact finder, "has been defined 'as being any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Ibid. (quoting Conklin, 145 N.J. at 418).

A party's failure to prevent or warn of sexual abuse they have reason to know about has been found to meet the standard for causation. J.S., 155 N.J. at 352. While proximate cause is typically reserved for a jury, "our courts have, as a matter of law, rejected the imposition of liability for highly extraordinary consequences." Ibid. However, when a defendant's breach of duty is both direct and predictable given the foreseeability of harm, the harm suffered by the plaintiff is "hardly an extraordinary result of [the perpetrator's] acts of molestation and . . . [plaintiff's] victimization is not an extraordinary consequence of [defendants'] own negligence." Ibid.

Taking plaintiff's factual allegations to be true for the purposes of summary judgment, Christakos, 262 N.J. at 467, a jury could reasonably find defendants: failed to implement and enforce policies banning sexual assault by its employees; failed to adopt and implement policies which would facilitate the prompt investigation and remediation of such assaults; and failed to discover the continuous sexual abuse of plaintiff for three years by one of its employees, the

20

only priest assigned to St. John parish at that time. It follows that these breaches could be found by a jury to be the proximate cause of plaintiff's abuse at the hands of Kosich. On damages, the record shows plaintiff's proofs on causation and damages are sufficient to survive summary judgment.

We affirm as to the trial court's dismissal of count three, negligent hiring, however we are satisfied that plaintiff presented a genuine issue of material fact on each element of his negligent supervision-related claims to defeat summary judgment. We reverse as to the trial court's dismissal of counts one, two, and four, and remand for proceedings consistent with this opinion.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

21